Mark MAYES, Petitioner,

v.

Jon P. GALLEY, Warden, Respondent.

Civ. A. No. MJG–93–2260.

United States District Court,
D. Maryland.

June 17, 1994.

Order Conditionally Granting
Habeas Corpus Petition July 11, 1994.

Tarra DeShields–Minnis, Asst. Atty. Gen., J. Joseph Curran, Atty. Gen., Crim. Appeals Div., Baltimore, MD, for respondent.

Kathryn R. Frey, Asst. Federal Public Defender, and James K. Bredar, Federal Public Defender, Baltimore, MD, for petitioner.

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION AFTER CONSIDERING OBJECTIONS

GARBIS, District Judge.

This Order is issued upon consideration of the Report and Recommendation of the United States Magistrate Judge dated April 25, 1994, the objections thereto, and after a *de novo* review of the entire record.

The Court agrees with the conclusion of the Magistrate Judge, and except to the limited extent that the following discussion may vary, agrees with his reasoning as well.

Both sides to this case contend that the subject plea agreement is clear and unambiguous. However, each side has a different view of the allegedly clearly and unambiguously correct interpretation. The Court agrees with neither party but finds, as did the Magistrate Judge, that the subject plea agreement is ambiguous. The rule of lenity requires that the ambiguity in the plea agreement be construed in favor of the Petitioner and against the Respondents. However, if there were not such a rule and the Court were required to choose between the two, the Court would find that the Petitioner's interpretation is more correct than the Respondents'.

The plea agreement established various conditions for the Petitioner to meet. If he met them, the State would recommend a ten year suspended sentence with five years supervised probation. Since the Petitioner did not meet those conditions, the "downside" provisions of the agreement are pertinent.

Paragraph 4 provides that:

[If Petitioner] fails to meet the requirements of this agreement, the State will recommend incarceration as it sees fit, but in any event no less than 4 and no more than 7 years total on all the charges.

Paragraph 9 provides that:

[If Petitioner is not truthful] during the course of this agreement, it will be considered a breach of this agreement [although the guilty plea may not be withdrawn], and the State will be free to recommend the maximum incarceration as it sees fit.

The Court is unconvinced by the arguments, particularly those of the State, which urge that the agreement is unambiguous. Paragraphs 4 and 9 are, at best for the State, inconsistent. For example, Paragraph 4 provides that *"in any event"* the State will recommend from 4 to 7 years of prison. This reference to "any event" is directly inconsistent with a Paragraph 9 interpretation which would permit a recommendation of more than 7 years. To construe the two paragraphs so as to avoid an inconsistency would require the Court to construe the "maximum incarceration as it sees fit" in paragraph 9 to refer back to the "incarceration as it sees fit" between 4 and 7 years in paragraph 4, thus adopting the Petitioner's view.

It appears that both parties breached the plea agreement. The Petitioner was certainly untruthful. Indeed, it appears that he obtained the plea agreement by fraud. He hardly presents an attractive picture. On the other hand, the State chose not to rescind the agreement—which it certainly could have. Therefore, since the State wished to have the agreement in effect, it was required to comply with it. The agreement, as interpreted by this Court, required the State to make a recommendation of no more than 7 years of incarceration. The State's failure to make that recommendation was a breach of the agreement.

The Court agrees with the determination of the Magistrate Judge to send the matter back to a state court judge for resolution of the appropriate course of action to take in light of the State's breach of the agreement.

Accordingly, the said Magistrate Judge's Report and Recommendation is hereby **AFFIRMED and ADOPTED** as follows:

1. The Court shall enter an appropriate Order consistent with the Report and Recommendation of the Magistrate Judge.

2. By July 8, 1994, the parties shall submit an agreed Order or separate Orders to accomplish this end.

3. Agreement on the form of an Order shall not constitute agreement with the ruling herein.

   a. Either party shall remain free to pursue all appellate rights with the regard to this matter.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

KLEIN, United States Magistrate Judge.

Petitioner Mark Mayes, presently incarcerated in the Roxbury Correctional Institution at Hagerstown, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Judge Garbis referred the case to the undersigned for submission of a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 301. Paper No. 5. No hearing is deemed necessary. Rule 8 Governing § 2254 Proceedings; Local Rule 105.6. It is recommended that the petition be conditionally granted as discussed below.

### Background

By criminal information filed February 22, 1989 in the Circuit Court for Baltimore City, petitioner was charged with possession of cocaine with intent to distribute and importation of drugs. Following plea discussions with the State's Attorney and pursuant to a written plea agreement, petitioner pled guilty to those charges on June 22, 1989 before the Honorable Edward J. Angeletti.[2] On July 20, 1989, Judge Angeletti sentenced petitioner to 20 years' imprisonment and a $25,000 fine on the possession with intent to distribute charge, and to 25 years' imprisonment

---

1. Initially, petitioner filed a *pro se* petition (Paper No. 1), respondents answered (Paper No. 10), and petitioner replied (Paper No. 14). The Court then appointed the Federal Public Defender to represent petitioner and ordered additional briefing by the parties. Petitioner, by counsel, then filed a supplemental petition (Paper No. 19), respondents answered (Paper No. 24), and petitioner replied (Paper No. 25). The Court has considered these filings and the entire record.

2. The State's proffer was that incident to a consensual search of petitioner's person and effects on January 31, 1989, at Pennsylvania Station in Baltimore, police discovered a large bag containing 107 grams of cocaine and a small bag containing 9.4 grams of cocaine. Paper No. 10, Exh. 8 at 10.

and a $25,000 fine on the drug importation charge. The sentences were to be served concurrently.

On August 21, 1989, petitioner filed an application with the Court of Special Appeals of Maryland for leave to appeal the judgment entered as a result of his guilty plea. Paper No. 10, Exh. 2. The appellate court denied the application by unpublished *per curiam* opinion filed March 15, 1990. *Id.*, Exh. 3. On December 23, 1991, petitioner filed a state post-conviction petition in the Circuit Court. *Id.*, Exh. 4. A post-conviction hearing was held before the Honorable Marvin B. Steinberg on July 17, 1992. *Id.*, Exh. 9. Judge Steinberg denied the petition in a written opinion dated August 5, 1992. *Id.*, Exh. 5. On September 4, 1992, petitioner filed an application in the Court of Special Appeals for leave to appeal that judgment. *Id.*, Exh. 6. The appellate court denied the application on February 26, 1993. *Id.*, Exh. 7. Petitioner filed the instant federal petition on August 4, 1993.

### Issues

Petitioner makes three arguments. First, he asserts that the government breached an unambiguous plea agreement by failing to make a particular sentencing recommendation. As a result, he argues, his plea was rendered involuntary in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the agreement must be specifically enforced against the State. Second, and alternatively, he argues that the plea agreement is ambiguous and must be construed in his favor against the State. Third, he argues that the sentencing judge rejected a binding plea agreement and, in so doing, violated Md.Rule 4–243(c)(4) by failing to: (1) advise petitioner he could withdraw his guilty plea; and (2) afford petitioner the opportunity to withdraw. In response, the State argues that the plea agreement is unambiguous and was

properly applied. The State also asserts that the sentencing court was not bound by the plea agreement and, even if it was and that the court violated a Maryland rule, the error is one of state law which a federal court may not correct. Significantly, both petitioner and the State seek to uphold and enforce their respective interpretations of the agreement. *See* Paper No. 19 at 5; Paper No. 24 at 28.

### The Plea Agreement

The plea agreement is central to petitioner's claim and is appended to this Report. Within 30 days of entering into the agreement, petitioner was required to: (1) plead guilty to the charges in the information; (2) cooperate with authorities as described; and (3) be candid and truthful. It is undisputed that the plea agreement was a very difficult one for petitioner to entirely fulfill as the cooperation required was quite extensive.[3] In order to aid petitioner's cooperation with the authorities, the State would recommend a reduction of bail to facilitate his release. The State memorialized its understanding that petitioner was not then on probation or parole. If petitioner could successfully complete the agreement, the State agreed in Paragraph 5 that it would recommend a ten year suspended sentence on all the charges and five years of supervised probation. At the June 22, 1989 plea hearing, petitioner testified that he was Mark Mayes, he understood the agreement, the maximum possible sentence, and the rights he was waiving. He also testified that he was not then on probation. Paper No. 10, Exh. 8 at 4–8. The trial court found petitioner's guilty plea to be "free and voluntary" and deferred disposition for 90 days pending a pre-sentence investigation. *Id.*, Exh. 8 at 11. Based upon petitioner's representations and those of the State, the trial court released petitioner on a $100,000 unsecured bond. *Id.*[4]

---

**3.** *See* Plea Agreement ¶ 14 ("Mr. Mayes understands that this agreement is as it appears and that it is a very harsh agreement. The State makes no representation that this agreement will be easy to complete successfully."); Paper No. 10, Exh. 8 (June 22, 1989 sentencing hearing transcript) at 12 (Judge Angeletti calls agreement "unrealistic"); Exh. 9 (July 17, 1992 post-convic-

tion transcript) at 24–25 (petitioner's counsel at plea hearing testifies he advised petitioner not to sign the agreement).

**4.** After telling petitioner's counsel that it believed there was "no way in the world" petitioner could complete the agreement in 30 days, the trial court warned petitioner that "[i]f the system bell

Under an arrest warrant, petitioner appeared before Judge Angeletti at a hearing on July 20, 1989. Petitioner was summoned in advance of the scheduled sentencing hearing as the pre-sentence investigation revealed that his real name is Mark Brady and that he misrepresented his identity to authorities.[5] A police sergeant who signed the plea agreement testified that the State entered into the agreement based on petitioner's representations that he had no prior criminal record. Paper No. 16 at 7–8.[6] The assistant State's attorney who signed the agreement told the court that the State permitted petitioner to plead guilty because of petitioner's representations that he had no prior criminal record. *Id.* at 5. The pre-trial investigator testified that petitioner had three outstanding warrants in New York for drug offenses. *Id.* at 12–13.

At the completion of this hearing, Judge Angeletti ruled as follows:

The court finds that the State has proven by an overwhelming preponderance of the evidence, since that is the standard which the agreement provides for, but if any other standard in law is required, beyond a reasonable doubt, and even though there is no such legal standard, beyond any doubt, that Mr. Brady, or Mr. Mayes has, in fact, violated the terms and conditions of this agreement in an absolutely vital significant way.

Under those circumstances, the court believes and so finds that the agreement has been violated, and therefore, is therefore null and void, and the State is under no further obligation in this case *other than to make whatever recommendation they think appropriate.*

In accordance with Paragraph 9, the guilty plea and verdict would not be permitted to be withdrawn.

*Id.* at 23 (emphasis added).[7] The State made no sentencing recommendation at all. *See* Paper No. 24 at 12; Paper No. 10, Exh. 5 at 2. Petitioner said in his allocution:

I took the plea bargain under the speculation that my history would not show. If, when I was presented on January 31st, all the information would have come up, I would not have pleaded guilty to the charge. I would have, in turn, I think, taken it to trial. . . .

The section which I violated about being truthful, really, it was, it was, how should I say, read to me and discussed with me. I thought it was pertaining to actions in which I might become involved in during the fulfillment of the obligation. I did not know that it was referring to my past history. Because if I would have known at that particular point, that particular section of the agreement, it is sort of open, it's like saying if I am untruthful about any situation involving the agreement. That is what I thought it was about, as far as the truth was concerned. I would have, at that point, relayed, if I had known that it was pertaining to my history as well, I would at that point taken my attorney's advice, and not signed that agreement.

The only reason I signed the agreement was because I thought that particular section of the agreement was pertaining to what I might become involved in, in the midst of fulfilling the agreement.

*Id.* at 27–29. Defense counsel argued to the sentencing court that the State could only recommend four-to-seven years' incarceration in the event petitioner was untruthful. *See id.* at 29.[8] The sentencing court imposed

---

falls, I will be there to make sure you don't get back up. I am not a nice person when that happens." *Id.*, Exh. 8 at 12.

**5.** Petitioner's other aliases are Mark Harris and Mark Mobley.

**6.** Sergeant Phillips also testified that during the time that petitioner was on release he did not fulfill the agreement with respect to some of the targets of the investigation. *Id.* at 9.

**7.** In this Court, "[petitioner] does not contest the state court's finding of untruthfulness." Paper No. 19 at 4.

**8.** Through selective use of the sentencing transcript, respondents repeatedly assert in their brief that defense counsel agreed that the provision for a recommendation of four-to-seven years' incarceration was no longer in effect. That view is unsupported by the record. *Compare id.* at 25–26 *with* 29. Defense counsel *did* agree that the sentencing court was not bound to

the maximum statutory penalty. *Id.* at 31–32.

### Discussion

At the outset, the Court does not regard as significant, for federal habeas corpus purposes in the context of this case, which Maryland rule of court governed the plea proceeding. The parties have discussed their positions with respect to whether the plea agreement was before the sentencing court pursuant to Md.Rule 4–243(b) or (c). Under Rule 4–243(b), the State's sentencing recommendation is only a recommendation and is not binding on the sentencing court. Under Rule 4–243(c), a plea agreement contemplating a particular sentence, disposition, or other judicial action, is presented to the sentencing court. If the sentencing court accepts the agreement, the court is bound by the contemplated disposition. If the sentencing court rejects the agreement, the court must advise the defendant that it will not be bound by the agreement, that the defendant may withdraw his plea, and that if he does not, the sentence may be more severe than that contemplated by the agreement.

■ This Court need not decide whether or not the sentencing court was bound by the agreement. When petitioner misrepresented his identity in open court for the purpose of concealing his criminal history and improperly gaining release from custody, petitioner committed a fraud on the court.[9] It is well-established that regardless of whether a sentencing court has previously accepted a plea agreement and bound itself to the agreement's contemplated disposition, when there is a fraud on the court, the court is no longer bound. *United States v. Skidmore,* 998 F.2d

372, 375 (6th Cir.1993); *United States v. Olesen,* 920 F.2d 538, 541 (8th Cir.1990); *United States v. Partida–Parra,* 859 F.2d 629, 632 (9th Cir.1988); *United States v. Cruz,* 709 F.2d 111, 115 (1st Cir.1983); *United States v. Blackwell,* 694 F.2d 1325, 1338 (D.C.Cir.1982); *see Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (there is no constitutional right to have a plea bargain once made, accepted by the court); *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962); *Fields v. Attorney Gen. of the State of Md.,* 956 F.2d 1290, 1297 n. 19 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 243, 121 L.Ed.2d 176 (1992).[10] The sentencing court had no obligation to impose any other sentence than the one it did.

Given that the parties agree that they proceeded under the plea agreement and seek enforcement of that agreement, the Court's inquiry must be what effect this plea agreement must be accorded under the Constitution. *See Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984) (federal habeas relief available only if custody violates Constitution). Plea bargaining jurisprudence necessarily draws upon the law of contracts. Constitutional concerns, however, counsel restraint in strictly applying principles of commercial law to the criminal law. *See United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986).

■ At the moment the State discovered petitioner misrepresented his identity to enter the agreement, it could have sought rescission of the plea agreement for petitioner's fraud in the inducement.[11] In this case,

---

the agreement by reason of petitioner's misrepresentations. *Id.* at 29.

**9.** *See* Paper No. 16 at 30–31 (sentencing court states: "I do not take lightly the total misrepresentation that you made to this court" and "This court cannot and will not ever permit by any inference whatsoever the perpetuation of that kind of deception").

**10.** The fraud on the court exception derives from the court's supervisory power to preserve the integrity of judicial process. *Partida–Parra,* 859 F.2d at 632.

**11.** *See Banks v. State,* 56 Md.App. 38, 466 A.2d 69, 74 (1983) (a plea agreement is not binding if it is induced by misrepresentation) (*citing* Albert W. Alschuler, *The Trial Judge: Role in Plea Bargaining, Part 1,* 76 Colum.L.Rev. 1059, 1116 (1976); Peter Westen & David Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Cal.L.Rev. 471, 529 (1978)); *State v. Hall,* 32 Wash.App. 108, 645 P.2d 1143, 1145 (1982) (defendant's use of false name to induce plea bargain was fraud, justifying rescission of plea agreement), *review denied,* 97 Wash.2d 1037 (1982); *see also Perkins v. Court of Appeals for the Third Sup. Jud. Dist.,* 738 S.W.2d 276, 284 (Tex.Crim.App.1987) (acknowledging that a de-

the State did not seek rescission before the sentencing court. Rather, the State's position was that petitioner violated Paragraph 9 of the plea agreement. *See* Paper No. 16 at 3. Paragraph 9 states that if petitioner is at any time untruthful, the State "will be free to recommend the maximum incarceration as it sees fit." In this Court, the State does not urge rescission. Rather, the State argues that the agreement was properly enforced, and petitioner seeks to abide by the agreement. Both parties urge the Court to find that the plea agreement was unambiguous.[12] Whether or not a written plea agreement is ambiguous is a question of law which this Court can review *de novo. United States v. Burns,* 990 F.2d 1426, 1433 (4th Cir.) (*quoting Harvey,* 791 F.2d at 300), *cert. denied,* —— U.S. ——, 113 S.Ct. 2949, 124 L.Ed.2d 696 (1993). The Court does not read the agreement to be unambiguous.[13]

The relevant penalty provisions of the agreement are Paragraphs 4 & 9. Paragraph 4 states that if petitioner fails to meet any requirement of the agreement, "the State will recommend incarceration as it sees fit, but in any event no less than 4 years and no more than 7 years total on all charges." Paragraph 9 states that truth and candor are express, material conditions of the agreement:

> Should it appear at any time that Mr. Mayes has not been candid and truthful during the course of the agreement, it will be considered a breach of this agreement,

and the State will be free to recommend the maximum incarceration *as it sees fit.* ¶ 9 (emphasis added).

■ Petitioner's view is that Paragraph 9 relates back to Paragraph 4. It is simply an expression of the importance of truthfulness. To buttress the claim, petitioner argues that the "as it sees fit" in Paragraph 9 refers back to the general penalty for not completing the agreement in Paragraph 4. In Paragraph 4, the State may recommend incarceration "as it sees fit, but in any event no less than 4 years and no more than 7 years on all charges." For its part, the State argues that Paragraph 9 "qualifies" Paragraph 4 by setting forth a special consequence of untruthfulness. Neither reading is free of ambiguity. Petitioner's interpretation is credible, but the agreement is not clear on whether "maximum incarceration" means the maximum contemplated by Paragraph 4 or the maximum contemplated by statute. The State's interpretation is flawed in that Paragraph 4 is unclear that "truth and candor" is excepted from the types of breach resulting in a recommendation of four-to-seven years' incarceration. Moreover, the Court rejects the State's assertion that petitioner would have Paragraph 4 subsume Paragraph 9. Paragraph 4 does *not* list the specific obligations petitioner was to fulfill. Effect can be given to both paragraphs by reading Paragraph 9 as simply listing untruthfulness as a condition subject to a penalty for breach. Unfortunately, the penalty is not clear.[14]

---

fendant's fraud in the inducement might estop him from specific performance of plea agreement); *People v. Selikoff,* 35 N.Y.2d 227, 360 N.Y.S.2d 623, 632, 318 N.E.2d 784, 791 (1974) (acknowledging fraud in the inducement theory), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975), *rev'g grant of habeas corpus petition,* 524 F.2d 650 (2d Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976).

12. In support of its contention that the agreement is unambiguous, the State asks the Court to examine extrinsic circumstances of record. Such an inquiry is irreconcilable with the State's position. Paragraph 15 of the agreement bears the following integration clause: "THIS IS THE ENTIRE AGREEMENT. This agreement can only be amended in a writing signed by all the parties." In plea agreements, as in commercial contracts, extrinsic evidence cannot be consid-

ered to vary the terms of an unambiguous written agreement intended to be the final, exclusive expression of the parties. *Hartman v. Blankenship,* 825 F.2d 26, 29 (4th Cir.1987) (*citing* U.C.C. § 2–202).

13. Of course, the mere fact that both parties assert the agreement can be unambiguously read their way does not inevitably lead to the conclusion that it is ambiguous.

14. Yet another interpretation is one petitioner advanced in his allocution. He asserted that he did not believe that untruthfulness about his identity was a breach contemplated by the agreement. *See* Paper No. 16 at 28. Rather, he said he thought it meant untruthfulness about information he would give to the authorities in the course of his cooperation. *See* Plea Agreement ¶ 9 ("it is expressly understood by Mr. Mayes that his truth and candor *in connection with her [sic]*

This Court is not willing to declare that the agreement is unambiguous. The agreement is ambiguous as a matter of law. *Harvey,* 791 F.2d at 301.

■ A guilty plea must be knowing and voluntary and, if it was induced by the State's promises, those promises must in some way be made known. *Santobello,* 404 U.S. at 261–62, 92 S.Ct. at 498. The Constitution requires holding the State to a greater degree of responsibility than a defendant (and certainly more than a commercial contracting party) when it has drafted an imprecise or ambiguous plea agreement. *Harvey,* 791 F.2d at 300. Indeed, a plea agreement which fails to apprise a defendant of the direct consequences of his plea implicates due process concerns. *Mabry,* 467 U.S. at 509, 104 S.Ct. at 2547. Here, the ambiguity is the textual uncertainty of whether the State was obligated to recommend a sentence of four-to-seven years or "as it saw fit." The uncertainty is compounded by the State's breach: the State made no sentencing recommendation whatsoever.[15] When the State breaches a plea agreement, the constitutionally permissible remedies are: (1) specific enforcement of the plea agreement construing ambiguities against the State; or (2) the opportunity to withdraw the plea and stand trial. *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *Fields,* 956 F.2d at 1300. Specific performance is not a constitutionally mandated remedy for prosecutorial breach. *Mabry,* 467 U.S. at 510 n. 11, 104 S.Ct. at 2548 n. 11; *Fields,* 956 F.2d at 1300; *see Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 498–99. Because the Constitution does not require a particular remedy, this Court on federal habeas corpus review is ill-suited to choose the necessary remedy in this case. It is the state trial court which is in the best position to determine which remedy best serves the ends of justice. *United States v. Jureidini,* 846 F.2d 964, 966 (4th Cir.1988); *see Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 498–99; *United States v. Wilson,* 669 F.2d 922, 923 (4th Cir.1982).

While this Court contemplates the range of possible remedies, it declines to choose one over another. That shall be the prerogative of the state trial court. The Court does feel that some guidance is necessary. As mentioned, the Constitution permits specific performance. Enforcement of such a remedy would require holding a new sentencing proceeding in which the State must recommend four-to-seven years' incarceration. That sentencing proceeding would have to be before a different sentencing judge. *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499. Certainly, the state sentencing court will be aware that petitioner has already served approximately five years of any term imposed. The state trial court may wish to enforce this remedy as the prosecution has never sought to repudiate the plea agreement and, indeed, the sentencing court's understanding was that the prosecution was required to make a sentencing recommendation. Since the prosecution has chosen to uphold its imprecise plea agreement, it must necessarily suffer the consequences of the agreement's ambiguity.

Another constitutionally permissible remedy is to permit petitioner to withdraw his plea and stand trial on the original charges. This Court leaves that possibility open to the state court and again, this Court does not choose. This Court's searching review of the record, however, places it in a position to identify certain equities. First among these is that petitioner and respondents seek to uphold this agreement. Since petitioner takes that view, he must be aware that the agreement is very clear that petitioner may not withdraw his plea, even when he breaches in one of the ways contemplated by the agreement. Petitioner argues that if this Court finds the agreement ambiguous, and it does, then the Court should determine whether or not the sentencing court was required by Md.Rule 4–243(c)(4) to permit petitioner to withdraw. This Court does not decide whether that rule applied or whether the opportunity to withdraw was necessary. Suffice it to say that this Court's view is that it shall not require the sentencing judge to

*cooperation* are express material conditions of this agreement").

**15.** In fairness to the State, it must be noted that the state sentencing court did not elicit a recommendation.

impose any particular sentence under the agreement due to petitioner's fraud on that court. Whether the opportunity to withdraw is to be given to petitioner now is the state court's decision.

Another relevant equity is prejudice. Whether by reason of delay or the sluggish nature of labyrinthine post-conviction process, five years have elapsed. This passage of time will undoubtedly prejudice the State's ability to prosecute this case. *United States v. Namkoong,* 616 F.Supp. 579, 580 (E.D.Va. 1985) (delayed plea withdrawal under Fed. R.Crim.P. 32(d) is prejudicial); *see United States v. Moore,* 931 F.2d 245, 248 (4th Cir.) ("[u]nder Fed.R.Crim.P. 32(d), a defendant does not have an absolute right to withdraw a guilty plea"), *cert. denied,* —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

Still another equity at issue is that petitioner did not seek to withdraw his plea at sentencing. Petitioner said at allocution that he pled guilty on the assumption that his untruthfulness would not be found out. Petitioner guessed incorrectly. It is the state court's responsibility to determine how its procedural rules apply to this situation. The calculus of whether or not to plead guilty necessarily involves some uncertainty of outcome. It is not a federal court's role on habeas corpus review to relieve prisoners from the adverse consequences of bad guesses.

This entire criminal proceeding was irregular. It may very well be that, since petitioner is imprisoned due to an extra-judicial bargain, another bargain is appropriate. Indeed, the parties attempted unsuccessfully to do just that during the state post-conviction phase of this case. Prior to the post-conviction hearing, petitioner, his attorney, and the prosecutor met in chambers with the judge. The record reflects that petitioner and the prosecutor had reached a new agreement which the post-conviction judge had, seemingly, once been willing to entertain. *See* Paper No. 10, Exh. 9 at 3–10. The agreement was that in exchange for petitioner's guilty plea he would receive a sentence of ten years' incarceration. *Id.* at 4. Apparently, this disposition was acceptable to the post-conviction judge, but he wanted to give a

"courtesy call" to the sentencing judge. *Id.* at 5. After the post-conviction judge did so, he refused to approve a ten year sentence. Obviously, just as *Santobello* mandates that the sentencing judge cannot participate in this case when it returns to state court, neither can the post-conviction judge. *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499. Perhaps the interests of justice require that the parties negotiate a new agreement to present to the state court. The interests of justice may also counsel how the State will exercise its prosecutorial discretion when this proceeding returns to the state court.

### Conclusion

The State breached the plea agreement by failing to make a sentencing recommendation. Because the parties wish to be bound by the breached agreement, and because that agreement is ambiguous as a matter of law, the Due Process Clause has been violated. The fact of the violation entitles petitioner to a remedy. While the Constitution permits a range of remedies, this Court is not in a position to choose a constitutionally permissible one. That particular exercise of discretion is best left to the Maryland courts which may better determine how their procedural rules apply to such a constitutional violation.

Accordingly, for all the foregoing reasons, it is respectfully recommended that upon the expiration of time to take exception to this Report, the Court enter an Order conditionally granting the petition for a writ of habeas corpus as follows. Within ninety (90) days of this Court's Order, respondents are to convene a hearing in the Circuit Court for Baltimore City before a judge who has not previously presided over any proceedings in this case. At that hearing, the present judgment of conviction should be vacated as violative of the U.S. Constitution. The state court should determine what appropriate remedy is to be instituted for the State's Attorney's breach. If no appropriate remedy is instituted by the Circuit Court as a result of a proceeding held within ninety (90) days, this Court should, upon petitioner's application, issue a federal writ of habeas corpus.

DATE: April 25, 1994

APPENDIX

*AGREEMENT*

IT IS HEREBY AGREED AS FOL-
LOWS:

1. That Mark Mayes has been advised of his right to counsel with regard to the negotiating and/or signing of this agreement. Mr. Mayes' attorney for this agreement Robert Durkin, Esq.

2. That the State will prosecute indictment Nos. 189053505 and 06 against Mr. Mayes charging him with Possession with the intent to Distribute Cocaine and Smuggling Cocaine stemming from the Baltimore City Police investigation filed under central complaint number 891A59142. It is understood that Mr. Mayes is not on probation or parole at this time.

3. Ms. Mayes agrees to enter a plea of guilty to the first counts of the indictments no later than June 22, 1989. At that time the Court will enter guilty verdicts and will hold disposition sub curia until the completion of this agreement. In addition, the State will request that Mr. Mayes' bail be reduced by the Court thereby enabling him to be released pending disposition, in order for him to be better able to effectuate his part of this agreement. Mr. Mayes will be required to maintain contact with the Court through Pre–Trial Release Services pending disposition.

4. In the event Mr. Mayes fails to meet the requirements of this agreement, the State will recommend incarceration as it sees fit, but in any event no less than 4 years and no more than 7 years total on all the charges. Mr. Mayes agrees that complete performance with the conditions of this agreement is the only acceptable conclusion contemplated by this agreement. Partial performances and good faith efforts will not be accepted and will not be considered as fulfillment of the terms of this agreement. Partial credit for any work completed by Mr. Mayes is entirely within the State's sole discretion. Good faith efforts by Mr. Mayes are irrelevant unless the State chooses to allow credit thereof. The guilty plea and verdict will not be withdrawn for any reason.

5. In the event Mr. Mayes does meet all the requirements of this agreement, the State will recommend a ten (10) year suspended sentence on all of the charges and five (5) years supervised probation with drug screening and treatment. In any event the State will inform the Court confidentially as to the extent of Mr. Mayes' cooperation.

6. Mr. Mayes agrees to cooperate as follows:

a. Mr. Mayes agrees to provide information, conversation, introductions, make purchases of CDS and perform any other reasonable request made of his in furtherance of the investigation in question. This includes but is not limited to making recorded telephone calls, wearing a kel set unit or nagra recorder, providing probable cause and possibly testifying to support the issuance of search and seizure warrants, court ordered clone beeper devices, dialed number recorder, bumper beepers, telephone wiretaps or any other electronic surveillance device, and providing grand jury, pretrial and trial testimony against the persons targeted in this agreement.

b. Mr. Mayes agrees that he can contact and aid in the investigation, apprehension and prosecution of as well as help develop additional cases on them and members of his organization.

c. Mr. Mayes agrees that he will work directly with Dets. Sgt. Frank Phillips and Dionysia Dameron of the Baltimore City Police Department. That any information given to any other police officer or agent without the direction of Det. Sgt. Phillips or Det. Dameron will not apply to this agreement.

d. Mr. Mayes agrees to make daily contact with one of the above law enforcement officers or any other officer pursuant to their direction. The leaving of written or telephone messages by Mr. Mayes will not fulfill his obligation. The burden is on Mr. Mayes to maintain daily personal contact with these officers. Mr. Mayes understands that any undue delays caused by, or disappearance of Mr. Mayes during the course of this agreement will be considered a breach of this agreement. This termi-

nation will occur at the discretion of the State.

e. Mr. Mayes agrees that his cooperation must lead to the seizure of at least 8 ounces of cocaine.

7. Mr. Mayes agrees to have completed the terms of this agreement no later than 30 days from the entry of the guilty plea by the defendant. This provision can only be waived and extended by the State.

8. That any arrest of Mr. Mayes not the result of his legitimate efforts toward completing this agreement but during the course of this agreement that prevents him from completing the terms of this agreement will release the State of it obligations. The guilty plea and verdict however will not be withdrawn. The State will not aid Mr. Mayes in extricating himself from those additional charges.

9. That it is expressly understood by Mr. Mayes that his truth and candor in connection with her cooperation are express material conditions of this agreement. To that end, Mr. Mayes will agree to take a lie detector test from time to time and any refusal to do so will be considered a breach of this agreement. Should it appear at any time that Mr. Mayes has not been candid and truthful during the course of this agreement, it will be considered a breach of this agreement, and the State will be free to recommend the maximum incarceration as it sees fit. The guilty plea and verdict will not be withdrawn for any reason.

10. That nothing in this agreement shall be construed to protect Mr. Mayes in any way from prosecution for false statements, perjury or obstruction of justice. The information that he discloses to law enforcement authorities pursuant to this agreement may be used against him in any such prosecution.

11. To encourage Mr. Mayes to give full complete and truthful disclosure to law enforcement officers, any statements by him in the course of this agreement will not be used against him by the State in its prosecution of its case-in-chief of this or any other case in which he is a defendant. Mr. Mayes understands however that his statements can and

will be used against him for purposes of impeachment in those cases.

12. That Mr. Mayes agrees not to disclose the terms of this agreement or the fact of this agreement with anyone except his attorney.

13. Mr. Mayes agrees that if there is a dispute as to whether or not Mr. Mayes has completely fulfilled all of his obligations under this agreement, it shall be determined by the Court, at an appropriate proceeding. At that proceeding, Mr. Mayes' disclosures and/or documents shall be admissible, and at that time the State will be required to establish any breach by Mr. Mayes of this agreement by a preponderance of the evidence. Mr. Mayes understands and agrees that he shall not be relieved of his obligations under this agreement solely because the State is relieved of any or all of its obligations.

14. Mr. Mayes understands that this agreement is as it appears and that it is a very harsh agreement. The State makes no representation that this agreement will be easy to complete successfully. Mr. Mayes understands he has a choice to reject this agreement, stand trial and that pre-agreement discussions will not be used against him except for impeachment purposes.

15. THIS IS THE ENTIRE AGREEMENT. This agreement can only be amended in a writing signed by all the parties.

| Mark Mayes | 6/22/89 |
|---|---|
| MARK MAYES | DATE |
| Robert Durkin | 6/22/89 |
| ROBERT DURKIN, ESQ. ATTORNEY FOR MR. MAYES | DATE |
| Robert J. Raymond | 6/22/89 |
| ROBERT J. RAYMOND ASSISTANT STATE'S ATTORNEY | DATE |
| Sgt. Frank Phillips | 6/22/89 |
| SGT. FRANK PHILLIPS | DATE |
| DET. DIONYSIA DAMERON | DATE |

### ORDER CONDITIONALLY GRANTING HABEAS CORPUS PETITION

GARBIS, District Judge.

In accordance with the June 15, 1994 Order Adopting Magistrate Judge's Recommendation After Considering Objections, the Court hereby Conditionally Grants the peti-

tion for writ of habeas corpus filed by Mark Mayes pursuant to 28 U.S.C. § 2254.

Within ninety (90) days of this Order, Respondents are to convene a hearing in the Circuit Court for Baltimore City before a judge who has not previously presided over any proceeding in this case. At that hearing, the present judgment of conviction shall be vacated as violative of the Due Process Clause of the United States Constitution. The state court shall determine, upon review of the attached Magistrate Judge's Report and Recommendation wherein a range of constitutionally permissible remedies are discussed, the appropriate remedy to be instituted in this case.

If no appropriate remedy is instituted by the Baltimore City Circuit Court as a result of a proceeding held within ninety (90) days of the issuance of this Order, this Court will, upon Petitioner's application, issue a federal writ of habeas corpus.

**SO ORDERED.**