*306
 
 SONNER, Judge.
 

 This interlocutory appeal comes to us with a request that we apply the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution to prohibit the State from trying William Nicholson on several counts involving illegal possession of cocaine. He alleges that the prosecution “goaded” him into withdrawing his guilty plea, which he had entered earlier, and because of that alleged goading, the court below should have dismissed the indictment and prohibited the State from prosecuting him at all. We affirm the court below in its refusal to do as he requested.
 

 Nicholson pleaded guilty on October 31, 2002, in the Circuit Court for Baltimore City, to conspiracy to distribute cocaine, possession of cocaine with intent to distribute, and possession of 448 grams or more of cocaine. The plea emerged from negotiations between Nicholson and his counsel and an assistant state’s attorney on the same day as his plea. The agreement that the State drafted and presented to Nicholson spanned several pages and contained complicated terms. The State agreed to recommend at the sentencing, which was to occur later, a sentence of fifteen years, five of which were to be served without parole. Nicholson, in return, agreed to furnish information and incriminating testimony about some thirty suspects. He was to receive use and derivative use immunity for any information he furnished to the State. If he failed to follow through with the information and testimony, or if he withdrew the guilty plea, according to the bargain, he agreed to plead guilty to a drug kingpin charge, which carried a minimum sentence of twenty years without parole.
 
 [1]
 

 While awaiting the delayed sentencing, Nicholson cooperated. Part of the information he furnished to the police re
 
 *307
 
 vealed that the automobile they had earlier confiscated from him contained cocaine in the compartment where a jack was located. After his arrest, police had searched the car with a search warrant and found nothing. With the information from Nicholson, they then returned to the car, opened the jack compartment, and recovered 605.5 grams of cocaine. Thereafter, the State used that cocaine to support the possession charge of 448 grams or more of cocaine, a crime that carried a mandatory sentence.
 

 The State’s proffer of evidence did not disclose that the cocaine to support the weight count in the indictment was the very same cocaine that Nicholson had revealed to police pursuant to the plea agreement. The proffer, instead, made it appear as if the State had recovered 605.5 grams of cocaine when it executed the search warrant before interviewing him.
 
 [2]
 
 It is the use of that cocaine that caused Nicholson to claim foul and move to withdraw his plea.
 
 [3]
 

 At a hearing before the very same judge who took his plea, Nicholson argued that the court should permit him to with
 
 *308
 
 draw it because of prosecutorial misconduct. At that hearing, the State conceded that the cocaine derived from the jack compartment, but claimed that the inaccuracy in the proffer resulted not from any intention to dissemble, but from a desire to make the proffer brief. The State, perhaps out of some contrition for having, at the very least, caused confusion, did offer to withdraw the weight count from the indictment, which would have eliminated the exposure to a mandatory sentence. Nicholson rejected this offer without saying why.
 

 The judge remarked that the State’s explanation for the erroneous factual statement in the proffer was “dubious and slick,” and granted Nicholson’s motion to withdraw his plea. Although the hearing judge did not precisely say so, the ruling suggested that the State’s breach of the agreement, by using the cocaine that the police discovered in violation of the agreement, entitled Nicholson to withdraw his plea.
 
 See Mayes v. Galley,
 
 858 F.Supp. 490, 497 (D.Md.1994) (explaining that, “[w]hen the State breaches a plea agreement, the constitutionally permissible remedies are: (1) specific enforcement of the plea agreement construing ambiguities against the State; or (2) the opportunity to withdraw the plea and stand trial”). The State thereafter filed a new indictment that contained a drug kingpin charge, which carries a mandatory twenty-year sentence.
 
 See
 
 Md.Code (2002, 2003 Supp.), Crim. Law § 5-613.
 

 The filing of the new charge prompted Nicholson to move to dismiss the entire indictment, based upon prosecutorial misconduct, and, at the same time, move to dismiss the kingpin charge, based upon prosecutorial vindictiveness. Nicholson’s brief reveals that, in the meantime, he also filed a complaint with the Attorney Grievance Commission of Maryland against one of the prosecutors in the case. The record does not disclose the nature of the complaint or the identity of the prosecutor. The Commission, after a little more than a month, dismissed the complaint, apparently without holding a
 
 *309
 
 hearing.
 
 [4]
 

 At the hearing before a different judge from the one who had taken his plea and allowed him to withdraw it, Nicholson argued that the use of the cocaine seized as a result of his debriefing and wrongly proffered as a product of a search warrant, was a “misplea,” that is, the forced withdrawal of his previously filed guilty plea. That alleged “goading” into withdrawing the plea, according to Nicholson, should bar the State from ever trying him on the original charges for the crimes covered by the original indictment. As alternative relief, he requested that the court dismiss the later filed drug kingpin charge because the motivation behind it was to punish him for successfully having "withdrawn his plea.
 

 After a lengthy hearing, the court denied Nicholson relief on either request, and it is from the refusal of the court to dismiss for double jeopardy concerns that he raises this appeal; the legitimacy of the kingpin charge is not before us. He is claiming in this appeal that he can invoke the Double Jeopardy Clause to bar the prosecution of any charges arising out of the plea agreement. The issue, as he frames it, is:
 

 Was it a violation of double jeopardy principles for the State to goad Appellant into seeking a “misplea,” i.e., withdrawal of his previously tendered guilty plea, due to prosecutorial misconduct stemming from the proffer session that took place in the matter?
 

 The long-standing policy against piecemeal appeals serves a valuable public purpose.
 
 Bunting v. State,
 
 312 Md. 472, 482, 540 A.2d 805 (1988). Although the denial of a motion to dismiss is not ordinarily a final judgment that entitles a defendant to appeal, when the motion to dismiss is on double jeopardy grounds, defendants may appeal before trial. Having to run a gauntlet of a trial before claiming double jeopardy would undermine the right.
 
 See Abney v. United States,
 
 431
 
 *310
 
 U.S. 651, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977);
 
 accord Dawkins v. Baltimore City Police Dep’t,
 
 376 Md. 53, 64, 827 A.2d 115 (2003). A claim of double jeopardy does not lend itself to appellate review after trial, because the protection against being held in jeopardy twice involves the right to avoid the trial itself. As a consequence, we granted Nicholson’s request to hear his argument that the trial court, in refusing to dismiss his indictment, denied him a basic constitutional right.
 

 The Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution provides: “nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.” The clause’s purpose is to assure finality for the benefit of the defendant in criminal trials. As Justice Black said long ago, “The constitutional prohibition against ‘double jeopardy’ was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.”
 
 Green v. U.S.,
 
 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).
 

 According to the cases enforcing this clause, the State may not prosecute,
 
 for
 
 the same offense, a defendant who is either acquitted or convicted, if the conviction is upheld on appeal.
 
 See State v. Griffiths,
 
 338 Md. 485, 489, 659 A.2d 876 (1995). Ordinarily, a defendant may not claim the benefit of the clause unless there has been a trial that has proceeded to verdict, but there are exceptions to this rule. First, if the court declares a mistrial over the defendant’s objection, without a “manifest necessity” to do so, jeopardy attaches.
 
 See U.S. v. JoRN,
 
 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Defendants are entitled to see their cases proceed to verdict. That particular exception is not at play here.
 

 The second exception, a narrow one, allows defendants to assert the claim, even though they have requested and been granted mistrials. This is the exception that Nicholson would like us to apply. It is relevant when prosecutorial misconduct causes a defendant to move for a mistrial.
 
 See State v. Taylor,
 
 371 Md. 617, 631, 810 A.2d 964 (2002). The law does
 

 
 *311
 
 not permit the defendant’s justified request for a mistrial to “ ‘afford the prosecution a more favorable opportunity to convict’ ” when the prosecutor has acted in bad faith.
 
 United States v. Dinitz,
 
 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (citation omitted). In other words,
 
 Dinitz
 
 stands for the proposition that prosecutorial misbehavior neutralizes the ordinary bar against claiming a double jeopardy violation when there has been no verdict.
 

 In
 
 Oregon v. Kennedy,
 
 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the U.S. Supreme Court restricted the applicability of this second exception. In reversing the Oregon Court of Appeals, which had ruled that Bruce Alan Kennedy was entitled to a new trial, the Supreme Court, speaking through Justice Rehnquist, observed that criteria that considered only prosecutorial “bad faith conduct” or “harassment” offered “virtually no standards for their application.”
 
 Id.
 
 at 674, 102 S.Ct. 2083. It is not the misconduct alone that entitles the defendant to bar prosecution, but the prosecutor’s specific intent to seek a second trial by intentionally aborting one before verdict that should cause jeopardy to attach. Thus, the Court held that “[pjrosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant’s motion, ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.”
 
 Id.
 
 at 675-76, 102 S.Ct. 2083.
 

 Justice Powell, in a separate concurring opinion, suggested that courts should use “objective facts and circumstances” in deciding whether the prosecutor intended to provoke a mistrial, because of the inherent difficulty in discerning subjective intent.
 
 Id.
 
 at 679-80, 102 S.Ct. 2083 (Powell, J„ concurring). He pointed out that, in Kennedy’s case, the “relevant facts and circumstances strongly supported] the view that prosecutorial intent to cause a mistrial was absent.”
 
 Id.
 
 at 680, 102 S.Ct. 2083.
 

 Notwithstanding
 
 Oregon v. Kennedy,
 
 some states have applied the Double Jeopardy Clause to prohibit retrials after a
 
 *312
 
 mistrial to punish prosecutors for outrageous trial misbehavior, or for overreaching, even when there was no evidence that the intent of the prosecutor was to seek some advantage through termination of a trial. Those states, however, have relied upon an independent ground from either their state constitutions,
 
 see Commonwealth v. Smith,
 
 532 Pa. 177, 615 A.2d 321, 325 (1992);
 
 State v. Moriwake,
 
 65 Haw. 47, 647 P.2d 705, 711 (1982), or their state rules,
 
 see State v. Martinez,
 
 86 P.3d 1210, 1216 (Wash.Ct.App.2004).
 
 [5]
 

 Maryland has never interpreted its common law protection against double jeopardy to extend beyond the Supreme Court’s interpretation of the Fifth Amendment.
 
 See, e.g., Galloway v. State, 371
 
 Md. 379, 424, 809 A.2d 653 (2002) (“Maryland’s courts often draw on the cases of the Supreme Court for guidance in developing our double jeopardy jurisprudence and, for this reason, our common law is generally harmonious with constitutional interpretations of the federal provision.”);
 
 Hagez v. State,
 
 131 Md.App. 402, 441, 749 A.2d 206 (2000) (discussing and applying
 
 Oregon v. Kennedy).
 
 Furthermore, Maryland has no rules allowing for dismissal of a case based upon prosecutorial misbehavior or overreaching. As Judge Moylan explained in
 
 Fields v. State,
 
 96 Md.App. 722, 738, 626 A.2d 1037 (1993), “It is not the heinousness of the error or even the impact of the error on the trial fortunes of the defendant that separates the former from the latter; the single criterion is the motive behind the error.”
 

 Nicholson wants us to transpose the reasoning of
 
 Oregon v. Kennedy
 
 and
 
 United States v. Dinitz,
 
 as it applied to mistrials, to his plea withdrawal. In response to a question at oral argument, counsel for Nicholson pointed out that, although he could find no case holding that
 
 Oregon v. Kennedy
 
 applied to a goaded plea withdrawal, he also could not find one that “held that it did not.” That is fair enough. The question, then, for
 
 *313
 
 us to decide is whether a defendant, who withdraws his plea because of prosecutorial misconduct, can find support in the Fifth Amendment to bar his retrial.
 

 Although we were unable to find a case precisely on point, one that either permitted or denied a defendant the right to claim double jeopardy after having had to withdraw a guilty plea because of prosecutorial misconduct, we did find one decided since the filing of the briefs that touched upon the issue, at least tangentially. In
 
 (U. v. Thurston,
 
 362 F.3d 1319 (11th Cir.2004), the federal appellate court considered whether the government’s “misconduct” in filing charges incorrectly was sufficient to bar a second trial after the defendant had pled guilty to a faulty charge that he succeeded in having the court dismiss. The government first charged Thurston with causing the death of a crew member under his command based on simple negligence.
 
 See id.
 
 at 1321. At the sentencing hearing, Thurston succeeded in convincing the federal district court that it had erred earlier in not dismissing the charge because the law required the government to prove
 
 gross
 
 negligence, instead of simple negligence.
 
 See id.
 
 at 1321-22. Accordingly, the trial court set aside his guilty plea.
 

 The government re-indicted Thurston, and he moved to dismiss and argued that the second indictment developed from “prosecutorial misconduct” in misleading the court about the necessity to show gross negligence, a violation of the Double Jeopardy Clause. The federal district court denied his motion and stayed the proceedings, pending the decision from the U.S. Court of Appeals.
 

 The Court of Appeals, in affirming the trial court, acknowledged that the Double Jeopardy Clause could apply, and referenced
 
 Oregon v. Kennedy.
 
 In doing so, it said that only “deliberate” prosecutorial misconduct would be actionable.
 
 Id.
 
 at 1323. It found, however, that the claim of misconduct was “frivolous and completely without merit;” that there was no evidence of intent “to mislead the district court in any way.”
 
 Id.
 
 at 1324. What the court did not rely upon as a reason to deny Thurston relief was that he had pled guilty to
 
 *314
 
 the initial charge. It noted that appellant’s brief cited no reported cases to support his position.
 
 See id.
 

 Before determining whether the facts of Nicholson’s case support a finding of intentional misconduct designed to abort the plea, it is also helpful to consider the Double Jeopardy Clause generally, to see whether applying it to the revocation of a guilty plea would be in keeping with its purpose. The concept of double jeopardy is “very old,” with written expressions of the idea dating back to fifteenth-century England.
 
 See United States v. Wilson,
 
 420 U.S. 332, 339-42, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (describing the common law history of the concept and its incorporation into the U.S. Constitution); William S. McAninch,
 
 Unfolding the Law of Double Jeopardy,
 
 44 S.C. L.Rev. 411, 416 (1993) (stating that “the language chosen by the Framers quite clearly suggests a broader scope for the [double jeopardy] protection than that which prevailed in Great Britain”).
 

 In
 
 Crist v. Bretz,
 
 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), Justice Stewart, quoting
 
 Green,
 
 355 U.S. at 187-88, 78 S.Ct. 221, succinctly related the sound basis for the protection:
 

 The basic reason for holding that a defendant is put in jeopardy even though the criminal proceeding against him terminates before verdict was perhaps best stated in
 
 Green v. United States:
 
 “The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.”
 

 Nicholson is not seeking simply to eliminate the charge tainted by the improperly proffered evidence, but is seeking to dismiss the entire indictment and walk out of the courthouse a free man. Is it appropriate to accord appellants the windfall
 
 *315
 
 of a conclusive dismissal when other remedies are available? Here, it seems that, before the prosecution used the evidence that Nicholson provided in his immunized statement, he had agreed to plead guilty and expose himself to a minimum sentence of five years. The State, in reaction to his disclosing prosecutorial misbehavior, agreed to drop the tainted count, which carried a minimum sentence, and to allow him to plead to the remaining counts in the indictment. Instead of compelling the State to abide by the negotiated plea bargain, he sought to ring the bell for a total dismissal.
 

 The facts in this case do not, on the record before us, show that the misbehavior of the prosecutor, whether or not outrageous, was designed to provoke or goad the defendant into moving for a mistrial. Indeed, the prosecution’s willingness to dismiss the tainted count, as well as its opposition to Nicholson’s withdrawal of the plea, is convincing evidence that no such improper intent existed. We fully accept the trial court’s finding that there was no nefarious motive on the part of the State.
 

 Without a finding of ill-will, Nicholson can find no redemption in
 
 Oregon v. Kennedy,
 
 even if that case and its progeny could pertain to certain situations when a guilty plea aborts. For example, the Double Jeopardy Clause might require the enforcement of a plea bargain that was untainted by improper evidence, but, at this time, that is simply a hypothetical case.
 

 In the final analysis, we understand the
 
 Oregon v. Kennedy
 
 line of cases to punish the State for trying to avert a loss, a result that the defendant was working to obtain, with tactics of provocation and unfair play. Barring further prosecution by dismissal, the court puts the State in no worse position than it would have been had the aborted trial, which the prosecution viewed as going badly, continued. The improper goading results in the defendant losing something while in jeopardy, and the Double Jeopardy Clause makes up for that loss.
 

 In the circumstance of a guilty plea, however, there is no possibility of a not-guilty verdict. The defendant awaits only a finding of guilt based upon the plea, not an acquittal. To
 
 *316
 
 afford this defendant a result that amounts to full exoneration would be to go well beyond what was bargained for in the fair and accepted plea disposition. Such a relief would be not only a windfall for the defendant, but a loss for the administration of justice.
 

 JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; APPELLANT TO PAY COSTS.
 

 [1]
 

 . The actual plea agreement was not included in the record, but in any event, it is unlikely that it was enforceable because it required Nicholson to plead guilty to a more serious charge, should he not plead to the lesser charge. In
 
 Boykin v. Alabama,
 
 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court held that a state trial court committed plain error when it accepted a defendant’s guilty plea
 
 *307
 
 '‘without an affirmative showing that it was intelligent and voluntary.” Maryland Rule 4-242(c) reflects this holding, as it states:
 

 The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea....
 

 Any prospective requirement of a forced plea, therefore, that did not account for this knowing and voluntary standard would not pass muster.
 

 [2]
 

 . The State's proffer was as follows: ''[OJn August 1, 2002, a search and seizure warrant was executed on William Nicholson's GMC Denali truck. Recovered was one plastic bag containing 605.5 grams of white powder which was analyzed and found to contain cocaine, a schedule [II] narcotic.”
 

 [3]
 

 . Nicholson also claimed that his previous attorney had a conflict of interest in representing him as well as a co-defendant, who the police arrested as part of the same investigation. Nicholson does not pursue the conflict claim in this interlocutory appeal.
 

 [4]
 

 . The filing of the complaint with the Attorney Grievance Commission may bear on Nicholson’s claim of prosecutorial vindictiveness, which is not before us. ITe does not argue that it is relevant to his double jeopardy argument.
 

 [5]
 

 . At least one commentator has argued that the requirement to show intent does not protect the values inherent in the Double Jeopardy Clause. See James F. Ponsoldt,
 
 When Guilt Should be Irrelevant: Government Overreaching as a Bar to Reprosecution Under the Double Jeopardy Clause After Oregon v. Kennedy,
 
 69 Cornell L.Rev. 76 (1983).